## VAN DUSEN-HARRINGTON COMPANY v. CANADIAN PACIFIC RAILWAY COMPANY AND ANOTHER.[1]

January 5, 1923.

No. 22,964.

**Damages for failure to get immediate transportation entry at boundary not recoverable from carrier.**

Damages caused by delay in the shipment of freight from Canada to Minneapolis, at the international boundary, because of the failure to obtain an immediate transportation entry, permitting it to proceed to Minneapolis before valuation and payment of duty, the customs bureau to which the freight was consigned "for customs purposes only" declining to make entry without payment or guarantee of its charges, of which the shipper was given timely notice by the carrier, cannot be recovered of the carrier.

Action in the municipal court of Minneapolis to recover $152.29 damages caused by delay in transportation of a carload of rye. The case was tried before Montgomery, J., who made findings and ordered judgment in favor of defendants. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

[1]Reported in 191 N. W. 411.

*A. C. Remele,* for appellant.

*George A. Kingsley* and *Kenneth Taylor,* for respondents.

DIBELL, J.

Action by the plaintiff to recover of the two defendant railroad companies for loss caused by delay in the transportation of a carload of rye from the Province of Saskatchewan, Canada, to Minneapolis, Minnesota. The delay was at the international boundary. The loss was occasioned by a fall in price. The case was tried to the court and findings were made in favor of the defendants. The plaintiff appeals from the judgment.

On July 26, 1917, the Saskatchewan Co-operative Elevator Company, Ltd. delivered to the Canadian Pacific in the Province of Saskatchewan a carload of rye for transportation to Minneapolis over that road and the Soo line. The car proceeded without delay to North Portal, Saskatchewan, on the border between the United States and Canada. Across the border is Portal, North Dakota, a port of entry of the United States. The Canadian Pacific and the Soo line meet here. The delay was because of a failure to get from the customs officials a clearance so that the shipment might proceed to Minneapolis. After the clearance the Soo line took the car to Minneapolis without delay.

The Canadian Pacific issued to the elevator company a bill of lading. The shipment was consigned to the order of itself· at Minneapolis, "notify Van Dusen-Harrington Company." It stated that the consular certificate would be sent to the customs broker at Portal, North Dakota. Under the circular of the Canadian Pacific filed with the board of railroad commissioners of Canada it was necessary that the railway company supply duplicate bills of lading consigning shipments to the "United Railways Customs Bureau at Portal, North Dakota." This was "for customs purposes only." The Customs Bureau would then make an "immediate transportation entry," and the shipment would proceed, without valuation or payment of duty until it reached Minneapolis, which was the port of entry of ultimate destination where valuation would be made and duty paid. This bill of lading was made out by the Canadian Pacific marked

"for customs purposes only," and the "United Railways Customs Bureau at Portal, North Dakota," was named consignee "for customs purposes only." The customs bureau refused to make an "immediate transportation entry" unless its service charges were paid or guaranteed. There is a suggestion that there had been trouble in collecting when payment was not made at the time. The Saskatchewan company was at once notified. After long delay it paid and the car at once moved.

As we view it the payment of the customs bureau service charge was not a transportation service so as to cast upon the railroad the duty of paying and adding to the freight charge. This is the view of the Interstate Commerce Commission which has first hand knowledge of these matters. In Emory v. Boston & Maine R. Co. 47 I. C. C. 200, 201, it says:

"Transportation by rail from Canada to points in the United States by through route can only be accomplished by compliance with the law requiring the entry, payment of custom duties, and release. The stoppage, therefore, is not the act of the carrier or of the shipper. It is required by the law of the land. Without compliance with this law the traffic can not lawfully move over the through route. It is true that the carrier is under no obligation to perform this customhouse service, but the carrier must observe it and not move the traffic farther without a customhouse release. The duty of complying with the law rests with the shipper, and he may perform that service in person or through an agent. If the shipper designates a broker to perform this service and release the shipment, the broker is the agent of the shipper and for this purpose stands in the place of the shipper."

The business of the carrier is to transport promptly. Many incidental charges for services on the way have come to be regarded as proper to be paid by the carrier and added to the freight charge. It is not the duty of the carrier to pay the custom broker's charge for making an immediate transportation entry, or itself to make such entry under circumstances such as are shown here. The shipper should not be permitted to contest the propriety or validity of

a customs charge by requiring the carrier to pay the charge, and then maintain its validity. A carrier need not engage in controversy with the customs officers, nor pay the charges of the broker for making the entry and be put to a dispute with the shipper over their validity. It discharges its duty if it gives its consignor the right to pay charges exacted. This was done here. It is evident that there is a controversy over the payment of immediate transportation entry charges. It may be meritorious. It is not for settlement by making the carrier take the burden.

The findings made by the court upon the facts involved are sustained.

Order affirmed.